Elizabeth Quick (WSBA #28869)
QUICK LAW GROUP PLLC
520 Kirkland Way, Suite 400
Kirkland, WA 98033
Tel: (425) 576-8150
Fax: (206) 694-2587
liz@quicklawgrouppllc.com

Jeff R. Dingwall (CA #265432)
EIGHT & SAND
110 West C Street, Suite 1903
San Diego, CA 92101
TEL: (619) 796-3464
FAX: (619) 717-8762
jeff@eightandsandlaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES T. NORVELL,<br><br>        Plaintiff,<br><br>v.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation,<br><br>        Defendant. | CASE NO.<br><br>**COMPLAINT** |

**PARTIES**

1.    Plaintiff James T. Norvell ("Plaintiff" or "Norvell") is a resident of Washington and, at all times mentioned herein, was employed by Defendant.

2.    Defendant BNSF Railway Company ("Defendant" or "BNSF") is a Delaware corporation and maintains its principal place of business in Fort Worth, Texas. BNSF

conducts substantial business in the State of Washington.

## JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000 and plaintiff and defendant are citizens of different states.

## VENUE

4. Venue is proper here pursuant to 28 U.S.C. § 1391 because BNSF conducts substantial business here, Norvell resides in this District, and the events complained of occurred in this District.

## GENERAL ALLEGATIONS

5. Norvell brings this lawsuit under Washington law for wrongful discharge in violation of public policy and for intentional infliction of emotional distress.

6. On or about August 31, 2015, Norvell was fired by BNSF following approximately 13 years of employment as an Engineer.

7. The termination followed Norvell's role in preventing a major catastrophe while working for BNSF and later exposing BNSF's dangerous maintenance practices of its locomotives.

8. On or about July 12, 2015, Norvell was assigned to work moving trains between two connected BNSF rail yards in Portland, Oregon known as Lake Yard and Willbridge Yard.

9. During his shift Norvell was at the controls of BNSF locomotive 2339 for the purpose of bringing approximately 22 freight cars into Willbridge Yard.

10. The tracks in Willbridge Yard are unique in that they all run downhill.

11. Traveling within the speed limits, locomotive 2339 did not respond to Norvell's efforts to slow as he traveled into Willbridge Yard.

12. Norvell was aware that there were co-workers working in the area and that another co-worker was riding at the end of the train he was controlling.

13. Norvell also knew that there were loaded hazardous tank cars at the bottom of the Yard and parked in a manner roughly broadside to the direction of travel of his train.

14. Additionally, Willbridge Yard is surrounded by major storage facilities of dangerous and flammable petroleum products.

15. If he could not stop the train, Norvell would have put the lives of his co-workers in peril and likely would have caused an enormous explosion and/or spill of hazardous materials that would have put the public at large in danger.

16. With no other option to stop the train in time to avoid catastrophe, Norvell threw the throttle into reverse and was able to bring the train to a safe stop.

17. The result of the rapid throttle reversal and sudden stop of the train is that locomotive 2339 was damaged and therefore out of compliance with Federal Railroad Administration safety regulations.

18. By letter dated July 16, 2015 ("Charge Letter"), BNSF notified Norvell that it was instituting disciplinary proceedings against him and ordered him to attend a formal disciplinary investigation. The Charge Letter stated that the investigation was being held "for the purpose of ascertaining the facts and determining your responsibility, if any, in connection with your alleged failure to safely operate your train, specifically, when you failed to properly stop your movement in accordance with proper train handling resulting in significant damage to locomotive 2339 while working … on July 12, 2015 in Portland, Oregon."

19. Formal disciplinary investigations at BNSF are held on Company property, they are overseen by a "Hearing Officer" who is a Company management official that acts as judge and prosecutor in ruling on evidence and objections and questioning witnesses on behalf of the Company. Another Company management official, known as a "Charging Officer" testifies against the charged employee. The charged employee does not generally have any right to discovery prior to the disciplinary investigation and often does not know the rules he will be charged with violating until the investigation begins. No lawyers are permitted and the charged employee is represented by a union representative and witnesses may or may not be made available by the Company to the charged employee.

20. Upon information and belief, disciplinary investigations at BNSF result in discipline being assessed against the charged employee at least 95% of the time.

21. The disciplinary investigation against Norvell proceeded on August 10, 2015 in Vancouver, Washington.

22. The Hearing Officer in Norvell's disciplinary investigation was BNSF Terminal Trainmaster Kevin Baker ("Baker").

23. During the disciplinary investigation, Norvell explained that, on July 12th, locomotive 2339 did not slow as it should have, creating an emergency situation and that he did what he had to do to stop the train and prevent a catastrophe.

24. Norvell also presented the unrefuted testimony of BNSF employee Warren Stout ("Stout"), a mechanic at the BNSF locomotive facility in Vancouver, Washington. Stout, by affidavit, testified that the Vancouver locomotive facility was the subject of many "band aid" repairs and that locomotive 2339 had brake rigging defects that had not been properly addressed despite multiple reports of the problem and multiple trips to the BNSF locomotive facilities in Vancouver and Seattle prior to July 12, 2015.

25. In performing repairs to locomotive 2339 following the July 12, 2015 incident, Stout discovered damage in the brake rigging that was "extensive enough to have compromised the integrity of the braking system and resulted in improper brake shoe application to the wheels."

26. Stout stated that the damage to the brake rigging could not have been caused by the actions of Norvell on July 12th, specifically his braking and reverse movement.

27. Stout concluded that the BNSF's refusal to authorize proper repairs to locomotives, including 2339, had resulted in "a fleet of substandard and non-compliant locomotives haunting this area" leaving workers such as Norvell "at the mercy of a locomotive that may have worked fine for the last shift."

28. Norvell also introduced into the investigation maintenance reports in which the need for brake rigging replacement was called for on locomotive 2339 more than a month prior to the July 12th incident yet the repairs were never performed and the locomotive was left in service.

29. By letter dated August 31, 2015, BNSF notified Norvell that, as a result of the

August 10th disciplinary investigation, he was permanently dismissed from service. The letter was signed by Baker and issued from BNSF's office in Vancouver, Washington.

30. BNSF knew or should have known that locomotive 2339, and others, required maintenance but refused to authorize the repairs and left the locomotives in service thereby placing its employees, including Norvell, and the public at large, in danger.

31. BNSF knew or should have known that, by refusing to repair locomotive 2339, and others, and by leaving those locomotives in service, employees, including Norvell, and the public at large, would be placed in danger.

32. BNSF knew or should have known that by its conduct described herein, that emotional distress to employees operating locomotive 2339, including Norvell, was certain or substantially certain or was aware that there was a high degree of probability that its conduct would cause emotional distress and proceeded in deliberate disregard of it.

33. BNSF knew or should have known that firing Norvell was certain or substantially certain to cause him emotional distress or was aware that there was a high degree of probability that its conduct would cause emotional distress and proceeded in deliberate disregard of it.

34. BNSF knew or should have known that firing Norvell would chill the safety reports and safety actions of other employees thereby endangering the public at large.

35. As a result of the events complained of herein, Norvell has suffered and continues to suffer damages including, but not limited to, lost wages and benefits, mental and emotional distress, and attorney fees and litigation costs.

## FIRST CAUSE OF ACTION
### (Wrongful Discharge)

36. Norvell incorporates by reference and re-alleges herein paragraphs 1 through 35.

37. Under Washington law an employee has a cause of action for wrongful discharge in violation of public policy where the employer discharges the employee for: 1) refusing to commit an illegal act, 2) performing a public duty or obligation, 3) exercising a

1 | legal right or privilege, or 4) engaging in whistleblowing activity.

38. Railroad companies, and BNSF in particular, conduct substantial business in Washington, often transporting hazardous cargo through populated areas.

39. The safe operation of trains is critical to the safety of the citizens of the State of Washington.

40. The safe operation of trains is contingent upon employees who perform their duties in a manner that reduces risk to the public at large, even at great risk to themselves.

41. Federal and State railroad safety laws and regulations require accurate information concerning hazards and risks that exist on the Nation's railroads so that, among other things, programs can be developed to eliminate such hazards and reduce risks to prevent railroad injuries and accidents. *See e.g.* 49 C.F.R. Part 225.1; 49 U.S.C. §§ 20107, 20109; WAC 480-62-310.

42. Norvell, in performing the emergency stopping maneuver on or about July 12, 2015, performed a public duty or obligation by preventing a potential catastrophe that would have caused great harm to the public at large.

43. Norvell, in reporting safety defects in BNSF's locomotives exercised a legal right or privilege.

44. Norvell, in bringing to light BNSF's substandard and dangerous locomotives engaged in whistleblowing activity.

45. Discouraging the conduct in which Norvell engaged would jeopardize the public policies cited above.

46. Norvell's public-policy-linked conduct caused his dismissal from BNSF.

47. Norvell has suffered damages as a result of his dismissal from BNSF.

## SECOND CAUSE OF ACTION

### (Outrage/Intentional Infliction of Emotional Distress)

48. Norvell incorporates by reference and re-alleges herein paragraphs 1 through 35.

49. BNSF intentionally or recklessly caused emotional distress to Norvell by its

extreme and outrageous conduct of failing to properly maintain and/or repair locomotive 2339 thereby placing Norvell in serious danger.

50. BNSF intentionally or recklessly caused emotional distress to Norvell by its extreme and outrageous conduct of terminating his employment.

## RELIEF REQUESTED

For these wrongs, Norvell seeks all relief available under the law, including but not limited to:

1. Back pay with interest;
2. Front pay;
3. Compensatory damages including damages for mental anguish and emotional distress;
4. Attorney fees and costs;
5. All such other relief as is appropriate under the circumstances.

**PLAINTIFF DEMANDS A JURY TRIAL.**

DATED: August 29, 2017

By: *s/Elizabeth Quick*
Elizabeth Quick (WSBA #28869)
QUICK LAW GROUP PLLC
520 Kirkland Way, Suite 400
Kirkland, WA 98033
Tel: (425) 576-8150
Fax: (206) 694-2587
liz@quicklawgrouppllc.com

Jeff R. Dingwall (CA #265432)
EIGHT & SAND
110 West C Street, Suite 1903
San Diego, CA 92101
TEL: (619) 796-3464
FAX: (619) 717-8762
jeff@eightandsandlaw.com
*Pro hac vice*

ATTORNEYS FOR PLAINTIFF