UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES T. NORVELL, | CASE NO. C17-5683 BHS |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION TO DISMISS |
| v. | |
| BNSF RAILWAY COMPANY, | |
| Defendant. | |

This matter comes before the Court on Defendant BNSF Railway Company's ("BNSF") motion to dismiss. Dkt. 10. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

## I.  PROCEDURAL HISTORY

On August 29, 2017, Plaintiff James T. Norvell filed his complaint in this lawsuit. Dkt. 1. Plaintiff brings claims against BNSF for a wrongful discharge in violation of public policy and the tort of outrage. *Id.* On October 11, 2017, BNSF moved to dismiss the complaint. Dkt. 10. On October 30, 2017, Plaintiff responded. Dkt. 13. On November 3, 2017, BNSF replied. Dkt. 14.

## II. FACTUAL BACKGROUND[1]

In 2015, Plaintiff worked for BNSF as a locomotive engineer. Dkt. 1 at 2. On July 12, 2015, Norvell was assigned to move trains between two connected BNSF rail yards in Portland, Oregon. *Id.*

While operating Locomotive 2339 to move 22 freight cars, Plaintiff found that the locomotive was not responding to his efforts to slow its downhill descent into the train yard. *Id.* at 2–3. Plaintiff was aware that there were workers in the area, that there were hazardous tank cars at the bottom of the yard, and that he was surrounded by storage facilities full of dangerous and flammable products. *Id.* at 3. Failing to stop the train "likely would have caused an enormous explosion and/or spill of hazardous materials" that would have placed the lives of those in the yard in imminent peril and created a danger to the public at large. *Id.*

In order to avoid a collision, Plaintiff placed the locomotive in reverse and successfully stopped the train. *Id.* Stopping the train in this way caused damage to Locomotive 2339 and brought it out of safety compliance with federal regulations. *Id.* However, there was "no other option to stop the train in time to avoid catastrophe." *Id.*

Subsequently, BNSF initiated an investigation and disciplinary proceedings against Plaintiff "in connection with [his] alleged failure to safely operate [his] train, specifically, when you failed to properly stop your movement in accordance with proper

---

[1] The following facts are taken from the allegations in Plaintiff's complaint and must be accepted by the Court as true for the purpose of this motion. *See Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983).

train handling . . . ." *Id.* During disciplinary proceedings, Plaintiff obtained and revealed testimony from a BNSF mechanic to the effect that (1) Locomotive 2339 suffered from braking defects that had not been properly addressed by BNSF, and (2) BNSF had refused to authorize appropriate repairs which had resulted in "a fleet of substandard and non-compliant locomotives." *Id.* at 4.

On August 31, 2015, BNSF fired Plaintiff. *Id.* at 5. Plaintiff now claims that BNSF, in violation of public policy, wrongfully terminated him for his actions in stopping the train and bringing BNSF's repair practices to light.

### III. DISCUSSION

BNSF moves to dismiss Plaintiff's complaint under two theories. The Court will first address BNSF's argument that Plaintiff's claims are preempted by the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151–188. Then the Court will address BNSF's arguments that Plaintiff's complaint fails to allege facts that support viable claims for a wrongful discharge in violation of public policy or the tort of outrage.

**A.  Motion to Dismiss Standard**

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a

"formulaic recitation" of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

**B.     Preemption**

Under the RLA, "[i]t recognized that where the resolution of a state-law claim depends on an interpretation of the CBA, the claim is pre-empted." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261 (1994). However, "the RLA does not preempt a cause of action if it involves rights and obligations that exist independent of the CBA and can be resolved without *interpreting the CBA itself.*" *Bevacqua v. Union Pac. Ry. Co.*, CV-05-0321-EFS, 2006 WL 2992875, at *6 (E.D. Wash. Oct. 17, 2006) (emphasis added). For this reason the Supreme Court has previously concluded that the RLA did not preempt a state law cause of action for wrongful discharge in violation of public policy. *See Hawaiian Airlines, Inc.*, 512 U.S. at 266.

As stated above, Plaintiff has brought a claim against BNSF for an allegedly wrongful discharge in violation of public policy. Dkt. 1 at 5–6. To support his claim, Plaintiff argues that he was fired for engaging in protected activities, such as preventing a train collision and reporting safety defects in BNSF's locomotives. Dkt. 1 at 6. BNSF argues that, because Plaintiff was terminated in light of conduct that violated terms in the CBA, it would interfere with and disrupt the stability of labor management relations if the Court were to render a decision that required changes to the provisions that the Union and BNSF negotiated in the CBA. Additionally, BNSF argues that such claims are preempted

by the RLA because Plaintiff did not raise any concerns regarding the condition of BNSF's locomotives until after BNSF had initiated disciplinary proceedings.

This case presents precisely the type of circumstance contemplated in *Hawaiian Airlines, Inc.*, where the Supreme Court determined that a state-law claim for wrongful discharge in violation of public policy was not preempted by the RLA. *See* 512 U.S. at 266. Whether BNSF terminated Plaintiff for conduct protected under Washington State law does not require the Court to interpret any aspect of the CBA. While some of Plaintiff's allegedly protected conduct occurred during the course of an arbitral dispute under the CBA, Plaintiff has failed to show that the timing of the conduct in and of itself requires the Court to interpret the CBA's terms. Additionally, it is clear that railroad employees such as Plaintiff have important rights and duties under public policy that are protected independently of the CBAs governing their labor relations. For instance, 49 U.S.C. § 20109 expressly provides a cause of action for railroad employees who suffer retaliation for reporting railroad hazards and misconduct by railroad carriers. Additionally, in addition to illustrating a clear public policy of encouraging railroad employees to report such concerns by creating a statutory cause of action, 49 U.S.C. § 20109 expressly states that nothing "therein preempts or diminishes any other safeguards against discrimination, demotion, discharge, suspension, threats, harassment, reprimand, retaliation, or any other manner of discrimination provided by Federal or State law." 49 U.S.C. § 20109(g).

Despite conclusory statements, BNSF has failed to provide any explanation or illustration as to how Plaintiff's claims will require the Court to interpret provisions of

the CBA. The Court therefore declines to dismiss Plaintiff's wrongful discharge claim on the basis that it is preempted by the RLA.

C. **Wrongful Discharge in Violation of Public Policy**

BNSF also moves to dismiss Plaintiff's claim for a wrongful discharge in violation of public policy on the basis that Plaintiff has failed to allege facts to support all the necessary elements of such a claim. Dkt. 10.

Generally, employment in Washington State may be terminated at will by either the employee or employer. However, "[o]ne narrow exception to the general at-will employment rule prohibits an employer from discharging an employee 'when the termination would frustrate a clear manifestation of public policy.'" *Roe v. TeleTech Customer Care Mgmt. (Colorado) LLC*, 171 Wn.2d 736, 755 (2011) (quoting *Ford v. Trendwest Resorts, Inc.*, 146 Wn.2d 146, 153 (2002). To define this prohibition, Washington courts have recognized a cause of action for "wrongful discharge in violation of public policy" that consists of the following four elements:

> (1) The plaintiffs must prove the existence of a clear public policy (the clarity element).
> (2) The plaintiffs must prove that discouraging the conduct in which they engaged would jeopardize the public policy (the jeopardy element).
> (3) The plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the causation element).
> (4) The defendant must not be able to offer an overriding justification for the dismissal (the absence of justification element).

*Roe*, 171 Wn.2d at 756 (quoting *Gardner v. Loomis Armored Inc.*, 128 Wn.2d 931, 941 (1996)).

With these elements, such a cause of action has generally arisen in four circumstances, including (1) when employees are fired for refusing to commit illegal acts; (2) when employees are fired for performing a public obligation, like jury duty; (3) when employees are fired for exercising a legal right, like filing a workers' compensation claim; and (4) when employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing. *Id.* at 755. Notably, "a court may not sua sponte manufacture public policy but rather must rely on that public policy previously manifested in the constitution, a statute, or a prior court decision." *Rickman v. Premera Blue Cross*, 184 Wn.2d 300, 309–10 (2015), *as amended* (Nov. 23, 2015) (citing *Roberts v. Dudley*, 140 Wn.2d 58, 65 (2000)). "Whether Washington has established a clear mandate of public policy is a question of law . . . ." *Danny v. Laidlaw Transit Servs., Inc.*, 165 Wn.2d 200, 207 (2008). On the other hand, "the 'jeopardy' element generally involves a question of fact." *Id.* at 224.

Plaintiff has advanced two theories in support of his wrongful discharge claim, including that (1) he was engaged in "whistleblowing" when he "reported" safety defects in BNSF's locomotives and "brought to light" that BNSF's locomotives are in allegedly substandard and dangerous condition, and (2) he was acting in direct furtherance of a clear manifestation of public policy when he prevented a collision of the train that he was operating. Dkt. 1 at 6. BNSF argues that each of these allegations fails to state a viable claim for wrongful discharge in violation of public policy.

### 1. Whistleblowing theory

BNSF first argues for the dismissal of Plaintiff's "whistleblower" wrongful discharge claims on the basis that Plaintiff's allegations do not implicate a sufficiently clear public policy. Dkt. 10 at 11. Plaintiff has argued that there is a clear public policy to encourage employees of railroad companies to report violations of Federal law, rules, or regulations relating to railroad safety. *See* Dkt. 13 at 6.

To support his theory that there is a clear public policy of reporting dangerous conditions pertaining to possible hazards and risks on railroads, Plaintiff cites 49 C.F.R. § 225.1; 49 U.S.C. §§ 20107, 20109; and WAC 480-62-310. These statutes and regulations outline the Secretary of Transportation's authority to proscribe recordkeeping and reporting requirements related to the safety of railroad equipment (*see* 49 U.S.C. § 20107); institute complete and accurate reporting requirements for railroad equipment incidents involving railroad equipment damages above a particular threshold (*see* 49 C.F.R. §§ 225.1, 225.11, 225.19, 225.21(a), (f)), WAC 480-62-310); establish procedures to enable railroad employees to supplement the incident reports of railroad carriers (*see* 49 C.F.R. 225.21(g)); and create express, non-exclusive statutory protections for employees who report to a supervisor information regarding violations of federal railroad regulations or railroad incidents that have resulted in damage to property (*see* 49 U.S.C. § 20109). Based on these statutory provisions, the Court finds that Plaintiff's complaint has sufficiently implicated a clear public policy as to support a claim for wrongful discharge.

BNSF next moves for the dismissal of Plaintiff's "whistleblower" theories on the basis that they do not state a viable claim for wrongful discharge because Plaintiff cannot

satisfy the jeopardy element. Dkt. 10 at 11–14. "[A] plaintiff establishes the jeopardy prong by demonstrating either of the following: his or her conduct was (1) directly related to the public policy or (2) necessary for effective enforcement." *Rickman v. Premera Blue Cross*, 184 Wn.2d 300, 311 (2015), *as amended* (Nov. 23, 2015) (quotation and alterations omitted). Accordingly, Washington courts have previously indicated that the jeopardy element is satisfied only "so long as the employee sought to further the public good, and not merely private or proprietary interests, in reporting the alleged wrongdoing." *Dicomes v. State*, 113 Wn.2d 612, 620 (1989). BNSF argues that the jeopardy element cannot be established in this case because Plaintiff's alleged "whistleblowing activity" was a reaction to the disciplinary proceedings brought against him and was therefore aimed at protecting Plaintiff's own private interests and not the public good.

      The fact that Plaintiff's "whistleblowing" occurred during disciplinary proceedings indicates that, at least to some extent, Plaintiff was motivated by his own proprietary interests. However, the timing of the reports as alleged in the complaints is insufficient to establish that Plaintiff did not also seek to "further the public good, and not *merely* private or proprietary interests." *Dicomes*, 113 Wn.2d at 620. It would be unworkable for the Court to conclude that a claim for wrongful discharge in violation of public policy automatically failed as a matter of law whenever a plaintiff's personal interests aligned with a clear manifestation of public policy. Instead, as Washington courts have directed, the question must be whether Plaintiff's actions are "directly related" to the public policy. Plaintiff has alleged that he took actions sufficiently related

to the public interest at issue by bringing to light the allegedly unsafe condition of BNSF's locomotives. To the extent that BNSF seeks to challenge Plaintiff's interests in taking such action, this is a factual issue that should be reserved for summary judgment.

**D.    Stopping the Train**

Plaintiff's complaint also alleges that he was acting pursuant to public policy when he stopped the locomotive that he was operating and averted a collision that would have "put the lives of his coworkers in peril and likely would have caused an enormous explosion and/or spill of hazardous materials that would have put the public at large in danger." Dkt. 1 at 3. Defendant's motion to dismiss fails to offer any argument regarding how these allegations fall short of a viable claim for wrongful discharge in violation of public policy.[2] Regardless, it is easily recognized that a clear public policy exists in protecting human life from imminent danger. *Gardner v. Loomis Armored Inc.*, 128 Wn.2d 931, 944 (1996) ("Society places the highest priority on the protection of human life. This fundamental public policy is clearly evidenced by countless statutes and judicial decisions."). Plaintiff's allegations quoted above indicate that his actions were directly related to the protection of human life. Plaintiff further alleges that the method in which he stopped the train was necessary. Dkt. 1 at 3 ("With no other option to stop the train in time to avoid catastrophe, Norvell threw the throttle into reverse and was able to bring the

---

[2] While BNSF eventually addresses this claim in its reply, *see* Dkt. 14 at 2–6, the Court will not dismiss a complaint based on arguments raised for the first time in a reply brief. *See United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").

train to a safe stop."). Finally, the complaint also alleges in very clear terms that BNSF terminated Plaintiff for his act of stopping the locomotive. *See id.* at 3–45. These allegations state a viable claim for wrongful discharge in violation of public policy. To the extent that BNSF may seek to challenge Plaintiff's allegations by disputing the existence of any actual danger to human life, the necessity of placing the locomotive's throttle in reverse, or the presence of an overriding justification for Plaintiff's termination, *see* Dkt. 14 at 5–6, these are clearly factual arguments that challenge the allegations of the complaint and are therefore inappropriate on a motion to dismiss.

**E.     Outrage Claim**

BNSF has also moved to dismiss Plaintiff's claim for outrage. "The tort of outrage requires the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003). Plaintiff has alleged that BNSF placed his and others' lives in danger by placing him on locomotive 2339 when "BNSF knew or should have known that, by refusing to repair locomotive 2339, and others, and by leaving those locomotives in service, employees, including Norvell, and the public at large, would be placed in danger." Dkt. 1 at 5. Additionally, Plaintiff has claimed that (1) he has suffered emotional distress due to the events that occurred and (2) BNSF fired him for averting a disaster nearly caused by BNSF's own willful failure to maintain its locomotives in an adequate state of repair. Accepting all of these allegations as true, this case is one "in which the recitation of the facts to an average member of the community [c]ould arouse his resentment against the actor and lead him to

exclaim 'Outrageous!'" *Jackson v. Peoples Fed. Credit Union*, 25 Wn. App. 81, 89 (1979) (quoting *Browning v. Slenderella Sys.*, 54 Wn.2d 440, 448 (1959)). Therefore, BNSF's motion to dismiss Plaintiff's outrage claim is denied.

## IV. ORDER

Therefore, it is hereby **ORDERED** that BNSF's motion to dismiss (Dkt. 10) is **DENIED**.

Dated this 2nd day January, 2018.

BENJAMIN H. SETTLE
United States District Judge