UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES T. NORVELL,<br><br>              Plaintiff,<br>    v.<br><br>BNSF RAILWAY COMPANY,<br><br>              Defendant. | CASE NO. C17-5683 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S PROPOSED SPECIAL VERDICT FORM |

This matter comes before the Court on the parties' briefs regarding Defendant BNSF Railway Company's ("BNSF") proposed special verdict form. Dkts. 127, 128.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On August 29, 2017, Plaintiff James Norvell ("Norvell") filed a complaint against BNSF asserting a claim for wrongful discharge in violation of public policy and a claim for intentional infliction of emotion distress (commonly referred to as "outrage"). Dkt. 1.

On July 9, 2019, BNSF filed a motion for summary judgment. Dkt. 50. On August 21, 2019, the Court granted the motion in part and denied the motion in part. Dkt. 64 ("SJ Order"). In relevant part, the Court limited Norvell's claim for wrongful discharge in violation of public policy to the single theory of taking swift action to

prevent immediate death or injury.  *Id.* at 9–10.  Under this theory, the Court concluded that Norvell had submitted sufficient evidence to meet his burdens under the burden shifting framework for analyzing such claims on summary judgment.  *Id.* at 9–13 (citing *Martin v. Gonzaga Univ.*, 191 Wn.2d 712 (2018); *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232–33 (1984)).

On August 27, 2019, the parties filed materials in preparation for trial.  Each party filed jury instructions in a manner that does not comply with the local rules.  *See* Local Rules W.D. Wash. LCR 51(e)–(f) (parties shall file one set of agreed instructions and one set of disputed instructions).  Because the parties submitted some identical proposed instructions, it is unclear whether they met and conferred before filing any of the trial materials.  On November 12, 2019, BNSF filed a proposed special verdict form that provides in relevant part as follows:

> 1. Did Plaintiff James Norvell prove by a preponderance of the evidence that his actions on July 13, 2015 were in performance of public duty or obligation?
> _____Yes               _____No
> 2. Did Plaintiff James Norvell prove by a preponderance of the evidence that his public-policy linked conduct was a substantial factor motivating his termination of employment?
> _____Yes               _____No
> 3. Do you find that Defendant BNSF had an overriding justification for termination Plaintiff James Norvell's employment?
> _____Yes               _____No
> 4. Do you find that Defendant BNSF proved by a preponderance of the evidence that Plaintiff James Norvell failed to mitigate his emotional distress damages?
> _____Yes               _____No
> 5. What is the amount of emotional distress damages that Plaintiff James Norvell failed to mitigate?
> $_____

> 6. What is the amount of emotional distress damages, if any, Plaintiff James Norvell proved by a preponderance of the evidence that were caused by Defendant BNSF's decision to discharge him? You must subtract any amount identified in Question No. 5 from the amount Plaintiff James Norvell proved, if any.
> $_____

Dkt. 121.

At the pretrial conference, the parties agreed that the Court's determination as to a final verdict form would assist the parties in resolving some issues. The Court requested supplemental briefing on BNSF's proposed special verdict form. On December 18, 2019, the parties filed the supplemental briefs. Dkts. 127, 128.

## II. DISCUSSION

Upon review of the material on file, the Court agrees that resolution of some outstanding issues would assist the parties in this matter. First, Norvell claims that the SJ Order established the law of the case on numerous issues. Dkt. 127 at 2–5. Although the order addressed some issues of law in this case, numerous questions of fact remain for trial. Norvell asserts that "[i]t is clear that Norvell has therefore established his liability case as a matter of law and all that remains for the jury are his damages." *Id.* at 2. This is fundamentally incorrect and is even undermined by Norvell's submission of proposed jury instructions on liability. *See* Dkt. 74 at 20. Norvell did not move for judgment on his claim or any element of his claim. Thus, the Court was not asked and did not *sua sponte* enter judgment in favor of Norvell on any element of his claim, and Norvell must still prove liability at trial.

Regarding the elements of a claim for wrongful termination in violation of public policy, Washington provides a pattern jury instruction that is an appropriate starting point for crafting the instructions in this case. Modified for this case, that instruction would provide as follows:

> To recover on his claim of wrongful termination in violation of public policy, Norvell has the burden of proving that a substantial factor motivating BNSF to terminate his employment was his performing a public duty.
> If you find from your consideration of all of the evidence that Norvell has not met this burden, then you must find for BNSF.
> If you find from your consideration of all of the evidence that Norvell has met this burden, then you must find for Norvell.

WPI 330.51 (modified). This instruction does not explain what public duty is at issue, which is an issue of law. "'The question of what constitutes a clear mandate of public policy is one of law' and can be established by prior judicial decisions or constitutional, statutory, or regulatory provisions or schemes." *Martin*, 191 Wn.2d at 725 (quoting *Dicomes v. State*, 113 Wn.2d 612, 617 (1989)). The Washington Supreme Court's prior decision in *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931 (1996), provides as follows:

> The narrow public policy encouraging citizens to rescue persons from life threatening situations clearly evinces a fundamental societal interest of greater importance than the good samaritan doctrine. The value attached to such acts of heroism is plainly demonstrated by the fact that society has waived most criminal and tort penalties stemming from conduct necessarily committed in the course of saving a life. If our society has placed the rescue of a life above constitutional rights and above the criminal code, then such conduct clearly rises above a company's work rule.

*Id.* at 936.  Thus, this prior judicial decision established the public policy of "the need for swift action to protect human life." *Ellis v. City of Seattle*, 142 Wn.2d 450, 461 (2000), as amended (Jan. 8, 2001).  The Court has a duty to inform the jury as to the law and, at this point, proposes to do so with either a separate instruction or with a short introductory paragraph added to WPI 330.51.  The Court proposes language as follows: "There is a public policy to perform the public duty of taking swift action to preserve human life regardless of whether such action violates a company rule."  Such language is only a proposal subject to the parties' objections or proposed alterations.  The Court, however, concludes that such language must covey two fundamental concepts, which are (1) a policy and duty in favor of acting to save human life and (2) such action is encouraged even if the actor violates a company rule by taking that action.

The issues in this case would be simpler if BNSF had terminated Norvell *only* for engaging the emergency brake to allegedly save him and his co-worker from death or serious injury.  In that factual scenario, it would seem that the only issue would be whether Norvell's decision was based on an objectively reasonable fear of such injury or death.  *Ellis*, 142 Wn.2d at 461 (in cases "involving immediate harm to life and limb," employee must have "objectively reasonable belief" that such harm is imminent).  There would not be an issue whether Norvell's action was a substantial factor in the termination because Norvell's action would have been the only factor for termination.  BNSF, however, gave two reasons for terminating Norvell and the jury must decide whether Norvell's action in performing the emergency braking in defiance of BNSF's work rule was a substantial factor in that termination.

Regarding pretext, this is not an element of Norvell's claim. The burden-shifting framework commonly implemented in employment cases is only intended as "a tool to assist plaintiffs at the summary judgment stage so that they may reach trial." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 855 (9th Cir. 2002), *aff'd*, 539 U.S. 90 (2003). While Norvell may submit evidence and argue to the jury that BNSF's other reason for his termination was pretext or unworthy of credence, there is no actual element of pretext at trial on a claim for wrongful termination. The Court concludes that this discussion addresses many of the issues raised by Norvell's brief and incorrect position as to the Court's prior ruling and law of the case.

Turning to BNSF's proposed verdict form, the Court finds that the first two questions are appropriate. The Court, however, generally prefers one simple question to the jury on liability such as "Did Norvell prove by a preponderance of the evidence that he was terminated in violation of public policy." Having said that, the Court finds it unnecessary to issue a definitive ruling at this point whether to send one question or two questions to the jury as to liability.

Second, BNSF requests a question regarding whether it had an overriding justification for terminating Norvell. Dkt. 128 at 11. This issue is the final element of what is commonly referred to as the "Perritt test." *Martin*, 191 Wn.2d at 727–28. Courts implement that test "to resolve a wrongful discharge suit that did not fit neatly into one of [the] four recognized categories" of claims for discharge in violation of public policy. *Id.* at 723. Because Norvell's claim falls into the performance of a public duty category

established in *Gardner*, the Perritt test is irrelevant to his claim. Accordingly, the Court will not send BNSF's proposed question three to the jury.

Finally, BNSF requests three questions regarding Norvell's mitigation of damages. At this point, the Court agrees with Norvell that these questions are irrelevant because BNSF has failed to submit any evidence of Norvell's failure to mitigate. In fact, BNSF failed to address this issue in its trial brief. *See* Dkt. 75. Thus, at this point, the Court concludes that these questions are irrelevant and unnecessary.

### III.  ORDER

Therefore, it is hereby **ORDERED** that BNSF's proposed special verdict form, Dkt. 121, is **GRANTED in part** and **DENIED in part** as stated herein.

Dated this 19th day of December, 2019.

BENJAMIN H. SETTLE
United States District Judge